UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-24865-SCOLA/REID

FRANVEL O. PAULINO,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court upon Plaintiff Franvel O. Paulino's Motion for Summary Judgment [ECF No. 22], and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Commissioner") Motion for Summary Judgment [ECF No. 27]. For the reasons stated below, the Undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

## BACKGROUND

Plaintiff appeals the denial of his application for Supplemental Security Income ("SSI"). Plaintiff protectively filed his application for SSI on April 8, 2019, alleging disability beginning March 30, 2000, his date of birth. [ECF No. 19 at 41]. Specifically, Plaintiff alleges he suffers from developmental delays, learning disorders, anxiety disorder, borderline intellectual functioning, dysphonia, dysarthia, and asthma. [ECF Nos. 19 at 43; 22 at 4–8]. Plaintiff's claim

1

was initially denied on August 19, 2019, and upon reconsideration on October 17, 2019. [ECF No. 19 at 41]. Plaintiff subsequently filed a written request for hearing in front of an ALJ. [*Id.*]. On April 21, 2020, a telephonic hearing was held in front of ALJ Jerry M. Lang. [*Id.*]. Plaintiff and his mother attended the hearing. [*Id.*]. Plaintiff, who has trouble speaking, did not testify during the hearing, and his mother testified on his behalf. *See generally* [*Id.* at 25–37]. Additionally, Michael Frain, an impartial vocational expert ("VE"), also attended the hearing. [*Id.*].

Following the hearing, the ALJ issued a decision denying Plaintiff's claims. *See generally* [*Id.* at 38–50]. Specifically, the ALJ concluded that Plaintiff:

(1) has not engaged in substantial gainful activity since April 8, 2019, the application date;

(2) has the following severe impairments: asthma, speech/language impairment, borderline intellectual functioning; learning disorder, and anxiety disorder;

(3) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

(4) has the residual functional capacity to perform a full range of work at all exertional levels, albeit with nonexertional limitations;

(5) has no past relevant work;

(6) was born on March 30, 2000, and was 19 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963);

(7) has at least a high school education and is able to communicate in English (20 CFR 416.964);

(8) transferability of job skills is not an issue because Plaintiff does not have past relevant work (20 CFR 416.968);

(9) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 416.969 and 416.969(a)); and

(10) has not been under a disability, as defined in the Social Security Act, since April 8, 2019, the date the application was filed (20 CFR 416.920(g)).

[*Id.* at 25–37]. A review of the ALJ's decision was requested [*Id.* at 134–36] and denied by the Appeals Council [*Id.* at 6–9]. Thereafter, Plaintiff sought judicial relief and initiated the instant action. Plaintiff contends that: (1) the ALJ denied him due process; (2) substantial evidence does not support the unfavorable decision because the ALJ failed to properly evaluate the evidence in assessing his residual functional capacity; (3) the ALJ did not adequately evaluate his subjective complaints of disabling symptoms; and (4) the ALJ erred in failing to permit him to cross examine the VE. *See generally* [ECF Nos. 1; 22].

## RELEVANT MEDICAL EVIDENCE

### (1) Dr. Romero-Bolumen

Ileana Romero-Bolumen, M.D., of West Hialeah Pediatric Associates, P.A., is Plaintiff's primary care physician. Plaintiff's treatment records with Dr. Romero-Bolumen [*Id.* at 438–76] are unremarkable. Dr. Romero-Bolumen, however, did refer Plaintiff to several other health care providers, whose medical and psychological evaluations are pertinent to Plaintiff's claims.

### (2) Dr. Alyssa D. Pensirikul

Plaintiff was seen by Alyssa D. Pensirikul, M.D., on January 5, 2017, following a referral from Dr. Romero-Bolumen. [ECF No. 19 at 458]. Dr. Pensirikul noted Plaintiff was born premature at roughly 23 weeks old and was hospitalized for nearly four months after birth. [*Id.*]. Plaintiff was found to have delayed speech from the time he was young and at the time of Dr. Pensirikul's evaluation "sentences were and still can be difficult to start although his articulation and vocabulary are appropriate." [*Id.*]. Notwithstanding this difficulty, Dr. Pensirikul found Plaintiff does not have a clear stutter although he "thinks faster than he can talk," and still could get "stuck" when starting a sentence. [*Id.*]. At the time of the evaluation, Plaintiff was in tenth grade and received educational assistance and was in an "inclusion classroom." [*Id.*]. Dr.

Pensirikul reported Plaintiff had a positive relationship with his schooling and "[n]ow loves school, works hard, has basketball as an extracurricular and wants to go into sports training." [*Id.*]. During the evaluation Plaintiff expressed that he also enjoyed spending time with family and wanted to learn to drive soon. [*Id.*].

As to Dr. Pensirikul's impression of Plaintiff, she noted he was "alert, [maintained] good eye contact … [and was] [q]uiet but respond[ed] quickly and appropriately." [*Id.* at 459]. Overall, she noted that despite Plaintiff's "history of very subtle motor and speech delays," he was "doing wonderfully and [was] excelling in school, basketball/extracurricular activities, and his family life," and was experiencing "only a subtle expressive language difficulty." [*Id.*]. As to treatment options, Dr. Pensirikul agreed (presumably with Dr. Romero-Bolumen) that Plaintiff "would benefit from speech therapy," but that there was "no need to pursue ancillary testing (MRI or EEF) given the lack of new/concerning symptoms." [*Id.* at 416].

### (3) Dr. Marissa Roecklein

Plaintiff was evaluated by Dr. Roecklein on April 17, 2019. [*Id.* at 542]. Plaintiff was referred to Dr. Roecklein for a diagnostic evaluation of his psychological, developmental, and intellectual condition. [*Id.*]. The referral, made by the Florida Department of Education, was for the purpose of determining Plaintiff's "vocational future and eligibility for Vocational Rehabilitation Services, benefits." [*Id.*]. The evaluation led Dr. Roecklein to conclude that Plaintiff's "mental status was remarkable as he obtained a score … which is highly suggestive of cognitive impairment." [*Id.* at 558]. Specifically, Plaintiff was found to be in the "borderline impaired" range regarding his full-scale Intellectual Quotient ("IQ"), had variations in his ability to concentrate because of his neurodevelopmental issues, and his academic achievement testing was suggestive of learning disabilities in reading, writing, and mathematics. [*Id.* at 558–59]. As to

Plaintiff's mental health, Dr. Roecklein noted that in addition to anxiety, he exhibited "insecurity, organicity of illness, childlike or regressive tendencies, a desire for power and achievement and a shy, timid nature." [*Id.* at 559]. It was recommended Plaintiff undergo "a course of individual therapy in order to address his symptoms of anxiety and decreased self-esteem." [*Id.* at 560]. Plaintiff indicated he would be open to this suggestion. [*Id.*]. As to other difficulties, Dr. Roecklein observed that Plaintiff struggled in expressing himself due to his speaking in a "raspy, muffled manner," had limited interpersonal skills, and had limited means of transportation given his anxiety surrounding driving.

Notwithstanding these difficulties, Plaintiff expressed interest in pursuing a career as a physical therapist or professional basketball player. [*Id.* at 544]. His mother indicated that "[Plaintiff] would likely excel in a job related to sports in some manner." [*Id.*]. As to his ability to function in a work environment, Dr. Roecklein concluded that Plaintiff's "aptitudes are adequate in most areas," but also noted that Plaintiff's "interests and aptitudes do not match significantly in any areas." [*Id.* at 558]. To help bridge this gap, Dr. Roecklein opined that Plaintiff "would benefit from a work assessment in order to determine the appropriate difficulty level and type of employment for him. He is encouraged to explore additional areas of interest as his current interest and aptitudes do not significantly overlap." [*Id.* at 560]. Further, it was recommended that Plaintiff "utilize the services of an employment specialist/job coach to help secure and maintain employment as well as to help him adjust to the work environment/vocational milieu." [*Id.*]. Dr. Roecklein, however, concluded Plaintiff "would not likely have significant[] difficulty tolerating the stressors of work." [*Id.*].

**(4) State Agency Consultants – Dr. Paul Sporn, Dr. Moses Izuegbu, Dr. Pamela D. Green, and Dr. J. Patrick Peterson**

(a) <u>Dr. Paul Sporn and Dr. Moses Izuegbu – State Medical Consultants</u>

Paul Sporn, M.D., who conducted the initial medical evaluation, noted Plaintiff had non-severe asthma, severe learning disorder, severe speech and language impairment, and non-severe anxiety. [*Id.* at 61]. Dr. Sporn found that Plaintiff's "allegations are largely supported by" the medical evidence. [*Id.* at 64]. Despite these limitations, Dr. Sporn concluded that Plaintiff maintained the residual functional capacity to work, although given his asthma, Plaintiff should avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, poor ventilation, and other hazards. [*Id.* at 63].

Moses Izuegbu, M.D., evaluated the reconsideration application, and affirmed the decisions made in the initial evaluation. *See generally* [*Id.* 70–77]. Specifically, Dr. Izuegbu found that Plaintiff "should be able to function within the parameters" of his residual functional capacity. [*Id.* at 77]. Dr. Izuegbu noted no new or changed conditions justifying a different decision than the one reached in the initial evaluation. [*Id.*]. In affirming Dr. Sporn's decision that Plaintiff is not disabled, Dr. Izuegbu reiterated that Plaintiff should avoid certain conditions because of his asthma, but nonetheless was capable of sustained work. [*Id.*].

(b) <u>Dr. Pamela D. Green and Dr. J. Patrick Peterson – State Psychological Consultants</u>

Following a review of Plaintiff's medical and psychological records and history, state psychological consultants Pamela Green, Ph.D., and J. Patrick Peterson, Ph.D., J.D., both concluded Plaintiff does not meet the disability standards to qualify for SSI. Dr. Green, who conducted the initial evaluation, noted Plaintiff had sustained concentration and persistence limitations. [*Id.* at 65]. As to specific manifestations of this limitation, Dr. Green concluded Plaintiff has moderate limitations in his ability to (1) carry out detailed instructions; (2) maintain

attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (4) interact appropriately with the general public. [*Id.* at 65–66]. As to all other pertinent psychological categories impacting Plaintiff's residual functional capacity to work, Dr. Green concluded Plaintiff was not significantly limited. [*Id.*]. As such, Dr. Green concluded Plaintiff's impairments were not disabling, and that he had sufficient adaptive, cognitive, and social skills to allow him to engage in sustained work. [*Id.*].

Dr. Peterson, who evaluated Plaintiff's reconsideration application, affirmed Dr. Green's initial determination that Plaintiff does not qualify for SSI. While acknowledging Plaintiff's limitations, Dr. Peterson concluded there was nothing justifying a reversal of Dr. Green's conclusions, and therefore the initial assessment was "affirmed as written." [*Id.* at 79].

## HEARING TESTIMONY

At the telephonic hearing held on April 21, 2020, Plaintiff appeared unrepresented by counsel, but was joined by his mother. [*Id.* at 24–26]. At the outset of the hearing, the ALJ informed Plaintiff of his right to representation in the proceeding. [*Id.* at 26–27]. The ALJ explained:

> you do have a right to be represented, either by an attorney or non-attorney representative. In either instance, you should know the people who handle these cases generally do so on a contingency fee basis. And all that means is that if your claim is unsuccessful, you generally owe no fee. But if your claim is successful, a fee can be taken from your back Benefits of 25 percent up to $6,000.00, whichever is less. Obviously, you do have a right to represent yourself. If you'd like to do that, we can go forward with your hearing today. But if you need time to find somebody to help you with your claim, then you postpone it the next 75 days to 90 days, give you the opportunity to find some help.

[*Id.*]. Plaintiff declined to postpone the hearing so he could obtain counsel, and provided "I'm ready to, I'm going to represent myself." [*Id.* at 27]. Plaintiff's mother inquired whether she could speak on Plaintiff's behalf during the hearing. [*Id.*]. The ALJ noted that she may do so if Plaintiff had no objection. [*Id.*].

Ms. Paulino explained that Plaintiff was born prematurely at 23 weeks and has had a number of medical issues since birth. [*Id.*]. Because of these issues, Plaintiff received disability benefits until he was four or five years old. [*Id.*]. At that time, he was taken off disability because of his mother's income. [*Id.*]. Through his disability benefits, and after through his school, Plaintiff received physical therapy, occupational therapy, and speech therapy. [*Id.* at 28]. At the time of the hearing, however, Plaintiff was no longer receiving these services because he did not have insurance. [*Id.*].

As to his education, Ms. Paulino noted that Plaintiff receives accommodations at school such as additional time for tests. [*Id.* at 28, 21]. Further, when the hearing took place Plaintiff was enrolled part-time at Miami Dade Community College, where he was taking general education courses. [*Id.* at 28]. Plaintiff, however, requires his mother to take him to school because he has anxiety around driving and has never had a driver's license. [*Id.* at 29–30].

Ms. Paulino also explained that Plaintiff has issues with his speech, where he will get "stuck," on a word, and will have to spend extra time to finish a sentence. [*Id.* at 29]. Further, Plaintiff exhibits difficulty maintaining focus when completing a specific task, and therefore needs simplified instructions and cannot be given too many commands at once. [*Id.*].

Regarding Plaintiff's health, Ms. Paulino posited that Plaintiff's "asthma [is] pretty much under control." [*Id.* at 31]. Instead, his main physical and mental health challenges revolve around "the section of [his] brain that didn't develop" because of being born prematurely. [*Id.*]. As such,

8

his main health problems have "to do with the fine motor, the gross motor, balance, and speech, and the cognitive," repercussions of being born prematurely. [*Id.*].

<u>Testimony by Vocational Expert Michael Frain</u>

The ALJ asked VE Michael Frain a hypothetical regarding the sort of work someone with Plaintiff's limitations, age, education, and lack of prior work experience could obtain, while also accounting for necessary environmental limitations because of Plaintiff's asthma and cognitive challenges. [*Id.* at 32]. With these conditions and limitations in mind, Mr. Frain posited that such an individual would be able to find work as an industrial cleaner and hospital cleaner. [*Id.* at 32–33]. In response, Ms. Paulino noted that because of Plaintiff's asthma, he could not be around certain chemicals such as bleach. [*Id.* at 34]. The ALJ, following up on that point, asked Mr. Frain whether the aforementioned occupations would expose the hypothetical worker to pulmonary irritants. [*Id.*]. After agreeing they likely would, Mr. Frain noted the same hypothetical individual would be able to work as a garment sorter, cafeteria attendant, or small products sorter. [*Id.* at 34–35]. Thereafter, Ms. Paulino remarked that a cafeteria attendant would likely be exposed to bleach. [*Id.* at 36].

## **RELEVANT LAW**

<u>Standard of Review</u>

Federal courts reviewing a social security appeal are to employ "a deferential reconsideration of the findings of fact and [an] exacting examination of the conclusions of law." *Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011). This inquiry is governed by the "substantial evidence" standard which provides the

> Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Where the Commissioner's decision is

> supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the review finds that the evidence preponderates against the Commissioner's decision.

*Kieser v. Barnhart*, 222 F. Supp. 2d 1298, 1305 (M.D. Fla. 2002) (citations omitted). The Supreme Court of the United States has explained that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Importantly, the reviewing court is prohibited from reweighing evidence already considered by the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Despite this deferential standard, the Commissioner's conclusions of law, done through the ALJ, are not afforded the same presumption of validity. *Williams*, 416 F. App'x at 862. Rather, the Commissioner's legal conclusions are reviewed *de novo*. *See Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018).

Regulatory Framework

The Social Security Regulations provide a five-step "sequential" evaluation process to be used by an ALJ to determine whether a claimant has established they are disabled. If at any step of the sequential evaluation the ALJ determines a claimant is or is not disabled, the ALJ concludes the inquiry and does not evaluate the next step. 20 C.F.R. § 416.920(a)(4).

The first step requires the ALJ to determine whether the claimant is engaged in "substantial gainful activity" ("SGA"). If the claimant is engaged in SGA then he or she is not deemed disabled and the ALJ's inquiry ends. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). Step two requires the ALJ to evaluate whether a claimant's alleged impairments are "medically severe." If the claimant's impairments are found to be medically severe the ALJ is to proceed to step three. *Id.* at 1237. In the third step, the ALJ must decide if any of the claimant's proffered impairments,

individually or in combination, "meet or equal" any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 1238. If so, the ALJ proceeds to the fourth step.

Step four requires the ALJ to undertake a two-part analysis. First, the ALJ must assess what the claimant's "residual functional capacity" ("RFC") is. Second, based on claimant's RFC, the ALJ must determine whether claimant can return to any "past relevant work." Lastly, the fifth step, in which the claimant no longer bears the burden, requires the ALJ to determine whether, given a claimant's age, education, work experience, and RFC, the claimant can perform any work. Essentially, during this step the

> ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.

*Philips*, 357 F.3d at 1239.

## DISCUSSION

Plaintiff alleges the ALJ committed the following errors:

I.      The ALJ violated Plaintiff's due process rights.
II.     The ALJ failed to properly evaluate the evidence in assessing Plaintiff's RFC.
III.    The ALJ failed to properly evaluate Plaintiff's disabling symptoms.
IV.     The ALJ erred in failing to allow Plaintiff to cross-examine the vocational expert.

The undersigned finds no merit in any of these arguments.

**I.      Due Process Claim**

Plaintiff alleges that the ALJ deprived him of due process by allowing him to waive his statutory right to representation without considering his learning disorder and speech limitations. [ECF No. 22 at 11]. This argument fails because Plaintiff's waiver was knowing and voluntary, and even assuming *arguendo*, it was not, Plaintiff was not unduly prejudiced as the ALJ fulfilled his duty to fully develop all the relevant facts of the case. *Smith*, 677 F.2d at 829 (explaining that

when a claimant who has not waived his right to counsel represents himself in a hearing, the ALJ's obligation to develop a full and fair record rises to a special duty). Therefore, Plaintiff was not deprived of his statutory right to due process.

An ALJ's decision must be reviewed based on whether it is supported by substantial evidence and proper legal standards. *Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 950 (11th Cir. 2010). Plaintiffs appealing the denial of their request for Social Security benefits have a waivable statutory right to be represented by counsel before an ALJ. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982); 42 U.S.C. § 406. Further, regardless of whether a plaintiff waived this right, the plaintiff must show they were prejudiced by not having counsel before remand is warranted. *Kelly v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The Commissioner is required to notify plaintiffs, in writing, of their options for obtaining legal representation in presenting their cases, and of the availability of pro bono legal services to qualifying plaintiffs. 42 U.S.C. §406(c). The Commissioner also has a duty "to notify a claimant of his or her right to counsel before the hearing." *Smith,* 677 F.2d at 828. A plaintiff must be adequately informed of this statutory right for a waiver to be made "knowingly and intelligently." *Id.*; *see also Coven*, 384 F. App'x at 950 (holding that the plaintiff's reception of three written notices of her right to representation constituted a knowing and intelligent waiver to that representation); *Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826 (11th Cir. 2017) (holding the plaintiff's waiver of representation was knowing and intelligent where claimant received prior written notice option to waive counsel, signed a waiver, and verbally reaffirmed waiver during ALJ hearing); *Polk v. Soc. Sec. Admin., Com'r*, 579 F. App'x 843 (11th Cir. 2014) (holding the plaintiff was properly apprised of her right to counsel and knowingly waived such right where the ALJ explained the plaintiff's right to representation, possibility of free counsel, and applicable limitations on attorney's fees during the hearing);

*Edmondson v. Saul*, No. 20-14211-CIV, 2021 WL 3727871 (S.D. Fla. July 29, 2021) (holding that the plaintiff knowingly waived her right to representation where she received written notice prior to the hearing, verbal notice during the hearing, and the hearing transcript did not show the plaintiff was confused as to her right to representation); *Stone v. Comm'r of Soc. Sec.*, 586 F. App'x 505 (11th Cir. 2014) (affirming lower courts holding that plaintiff waived his right to representation despite having intellectual disability not rising to a level of "severe impairment"). *But see Brown v. Shalala*, 44 F.3d 931 (11th Cir. 1995) (holding the plaintiff had not made a knowing and intelligent waiver of right to representation where the hearing transcript showed clear confusion from the plaintiff); *Cowart v. Schweiker¸* 662 F.3d 731 (11th Cir. 1981) (holding plaintiff did not waive right to representation where the record shows plaintiff did not truly "wish" to proceed without counsel).

In the instant case, Plaintiff was given proper notice of his right to representation through both written and oral means. Plaintiff received two notices of hearing, on January 17, 2020, and February 10, 2020, respectively. [ECF No. 19 at 104–09, 122]. These notices contained sections detailing what a representative can do in social security cases, how to choose representation, how to notify the government when representation is chosen, what a representative may charge, and how to contact the Social Security Administration regarding questions. [*Id.*]. Furthermore, during the actual hearing, the ALJ gave a detailed explanation of Plaintiff's right to representation. [ECF No. 19 at 26–27]. The ALJ explained the statutory right to representation, that in social security cases attorneys often work on contingency basis, how the contingency fee arrangement operates, and that the hearing could be postponed for 75–90 days so Plaintiff could find representation, if he so chose. [*Id.*]. These facts point to Plaintiff receiving more than adequate notice of his right to representation.

Plaintiff cites *Brown* and *Cowart* to support the assertion that his waiver was not knowing or intelligent, and did not reflect his "true desire." *See Brown*, 44 F.3d at 935; *Cowart*, at 734. These cases, however, are factually dissimilar. In *Brown*, the hearing transcript included a lengthy exchange between the ALJ and the plaintiff regarding the right to representation. 44 F.3d at 933. During this exchange, the plaintiff was clearly confused when asked whether she had representation. *Id.* The plaintiff, in response to the ALJ's question, stated, "[w]e sent it in, but they just wouldn't, wouldn't, **we don't understand it**. He even, my—counselor called and the lady said we got it, we got it, it's been sent in." *Id.* (emphasis added). The ALJ again asked the plaintiff whether she had representation without re-phrasing the question or explaining further. *Id.* In response, the plaintiff, again, stated, "we, we, we, we sent one in, but they just wouldn't. **I don't understand**." *Id.* (emphasis added). Finally, the plaintiff agreed to proceed without representation. *Id.* The Eleventh Circuit found that, "[a]lthough she eventually responded in the affirmative . . . her earlier statements reflect that she wanted the assistance of her former supervisor . . . [n]othing in her testimony evinces an understanding that she had other options which were either explored or rejected." *Id.* at 935.

Here, the hearing transcript does not show any level of confusion comparable to that found in *Brown*. When Plaintiff's right to representation was explained to him and the ALJ asked whether he would like to proceed without representation, he replied, "[c]an—I'm ready to [proceed], and I'm going to represent myself." [ECF No. 19 at 27]. Unlike in *Brown*, Plaintiff did not appear to misunderstand his right to counsel or the process by which he may obtain one. 44 F.3d at 933. Rather, Plaintiff stated, clearly, that he was ready to move forward without representation. [ECF No. 19 at 27].

In *Cowart*, when the plaintiff was asked whether she would like to proceed without representation she replied, "[y]es, as of now, I don't have one." 662 F.2d at 734. Further, testimony by the plaintiff's husband showed, however, that she wished to proceed with counsel but did not succeed in obtaining free public representation and could not afford private representation. *Id.* In light of those circumstances, the court concluded that "[the plaintiff's] failure to obtain counsel was due to her inability to afford counsel rather than a 'wish' to proceed without counsel." *Id.* at 735. Thus, it was held that the plaintiff did not actually waive her right to representation. *Id.* These facts, however, are readily distinguishable from the instant case. Nowhere in the transcript does it show that Plaintiff decided to proceed without representation for any reason other than his desire to represent himself. Neither Plaintiff nor his mother stated that they had attempted to find representation, desired to do so, or could not afford an attorney. [ECF No. 19 at 27]. Rather, Plaintiff gave a short and clear statement that he was ready and wished to proceed without representation. [*Id.*].

Plaintiff also argues given his impaired cognitive ability, learning disability, and difficulty with communication, his waiver should not be accepted as knowing and voluntary, and therefore was made in violation of HALLEX I-2-1-80.[1] [ECF No. 22 at 11–12]. This argument, however, is unconvincing in light of the ALJ's clear explanation of Plaintiff's statutory right to an attorney. [ECF No. 19 at 26–27]. Though Plaintiff carries certain cognitive and learning impairments, they are not of the severity that would impair his understanding of the clear directions given by the ALJ during the hearing. As exhibited by the evaluation performed by Dr. Roecklein, Plaintiff can function in general education studies, comprehend instructions, make judgments, and evaluate

---

[1] Plaintiff cites to HALLEX I-2-1-90 in his Motion. [ECF No. 22 at 11]. As the Commissioner notes, this appears to have been a typographical error as the pertinent provision dealing with notice of right to counsel is HALLEX I-2-1-80.

information, albeit with certain limitations. *See generally* [*Id.* at 542–60]. The Plaintiff's level of functioning indicates that he was able to understand his right to representation during the hearing, and previously has time to review the right based on the notices which had been sent to him. Therefore, Plaintiff knowingly waived his right to representation. *Cf. Ferguson v. Barnhart*, 67 F. App'x 360 (7th Cir. 2003) (holding a claimant's waiver of representation was invalid where the claimant was mentally disabled **and** the ALJ did not fully explain the scope of representation available to claimant) (emphasis added).

Nevertheless, even if Plaintiff did not validly waive his right to representation, there is nothing in the record indicating the absence of counsel prejudiced Plaintiff. Generally, to show prejudice, the plaintiff must show the ALJ did not have all the relevant evidence before him in the record or that the ALJ did not consider all the relevant evidence in making the decision. *Coven*, 384 F. App'x at 951. Further, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (internal quotation marks omitted). While the ALJ's obligation to develop a full and fair record rises to a special duty where a plaintiff who has not waived his right to counsel is representing himself in a hearing, the examiner has no obligation to act as counsel and must only develop the facts. *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).

In the instant case, the ALJ fully developed the relevant facts of the case, including those favoring Plaintiff. As evidenced by the hearing transcript and the ALJ's decision, the ALJ adequately inquired into the circumstances regarding Plaintiff's disability. The ALJ considered Plaintiff's educational history [ECF No. 19 at 46], scores on intelligence and functionality tests [*Id.* at 44–45], and medical records [*Id.* at 46–48]. Plaintiff contends the ALJ erred by not assigning enough weight to his communication and learning disabilities in allowing him to represent himself

16

and therefore prejudiced him in the final decision. [ECF No. 22 at 12, 15]. Substantial evidence, however, in both the ALJ's decision and hearing transcript show the ALJ fully developed the record when considering these issues. In addressing the severity of Plaintiff's impairments, the ALJ based his opinion on the results of the functionality tests Plaintiff had taken. [ECF No. 19 at 43–45]. When evaluating Plaintiff's residual functional capacity, the ALJ considered both Ms. Paulino's testimony during the hearing regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms, as well as the numerous medical reports from his doctors. [*Id.* at 45–48]. During the hearing, the ALJ acknowledged and inquired into the additional accommodations given to Plaintiff in school [*Id.* at 28–29, 31] and gave credence to the opinion of Dr. Roecklein regarding Plaintiff's functional ability in the workplace [*Id.* at 47].

Although Plaintiff may take issue with the weight the ALJ assigned to each piece of evidence, there is no showing of gaps in the record clearly prejudicing Plaintiff. *See also Smith*, 677 F.2d at 829–830 (holding the plaintiff was not prejudiced by lack of representation where the record revealed that no relevant facts, documents, or other evidence was omitted from the ALJ's consideration or findings); *Graham*, 129 F.3d 1420 at 1423 (same); *Edwards v. Sullivan*, 937 F.3d 580, 586 (holding the plaintiff was not prejudiced by lack of representation where the ALJ procured reports from three consulting doctors to aid in his understanding of the claimant's limitations).

Lastly, Plaintiff suggests that he was prejudiced by his mother "dominat[ing] the hearing" and because the ALJ did not order any additional consultive examinations. [ECF No. 22 at 14]. Plaintiff did not object to his mother testifying on his behalf, nor is there any evidence on the record indicating that his mother was uninformed as to the issues underlying Plaintiff's claims. Further, social security determinations are not inherently adversarial, and the onus of establishing

17

eligibility for benefits is on the plaintiff. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The ALJ has a duty to develop the record, but is not required to order consultive examinations if the record contains sufficient evidence for the ALJ to make an informed decision. *Id*. Here, as previously addressed, the record was sufficient for the ALJ to make a properly informed decision.

Accordingly, Plaintiff has failed to show his waiver of the right to counsel was not knowing and intelligent, nor that he was prejudiced by a lack of representation. Accordingly, Plaintiff was not deprived of his statutory right to due process.

## II.     The ALJ's Evaluation of Claimant's Residual Functional Capacity

The ALJ's determination that Plaintiff maintains the RFC to work at all exertional levels, albeit with certain environmental limitations, is supported by substantial evidence. The record evidence is sufficient to support the ALJ's decision, and the ALJ was not required to base his opinion on the conclusions of a particular medical provider. Accordingly, the ALJ did not err in this conclusion.

The ALJ has a duty to assess Plaintiff's RFC based on all the relevant evidence in the record. *Philips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). In fact, the task of evaluating Plaintiff's RFC and ability to work falls squarely on the shoulders of the ALJ rather than a medical provider. *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016). A district court's review of the ALJ's decision is based on whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence has been treated as relevant evidence a reasonable person would deem adequate to support a conclusion and is oft cited as to be more than a scintilla but less than a preponderance. *Hale v. Bowen*, 831 F.3d 1007, 1011 (11th Cir. 1987); *see also Martin v. Sullivan*, 894 F.3d 1520, 1529 (11th Cir.

1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) ("Under this standard, we do not reverse the Secretary even if this court, sitting as a finder of fact, would have reached a contrary result[.]"). Furthermore, an ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence on the record." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court . . .] to conclude that [the ALJ] considered [the plaintiff's] medical condition as a whole.'") (citation omitted). Lastly, the Court may not reweigh evidence or substitute judgment for that of the Commissioner. *Philips*, 357 F.3d at 1240 n.8.

Plaintiff contends the ALJ erred in assessing his residual functional capacity ("RFC") and ability to perform past relevant work. [ECF No. 22 at 15]. Specifically, Plaintiff asserts that he was prejudiced by the ALJ's failure to consider the relevant evidence regarding his communicative and cognitive limitations. [*Id.*]. Plaintiff particularly emphasizes his learning disorders with specific attention to his impairment with written expression, reading, social skills, and communication. [*Id.*] He points to attendance in speech therapy and that his mother spoke on his behalf at the hearing as evidence of his difficulty with communication. [*Id.*]. Plaintiff contends that "[d]espite this evidence, the ALJ did not find that Mr. Paulino had **any** limitations in his ability to communicate in the RFC." [*Id.*] (emphasis added). This assertion is incorrect. The ALJ's opinion and the record clearly shows that the ALJ acknowledged and considered Plaintiff's learning and communicative impairments. In making the RFC determination, the ALJ noted Ms. Paulino had

testified that Plaintiff had speech problems, sometimes "gets stuck on a word, keeps repeating it, and then stops speaking," receives test-taking accommodations because it takes him more time to read and process questions, has difficulty comprehending several commands at once, and cannot multi-task. [ECF No. 19 at 46]. Further, the ALJ detailed Plaintiff's medical history related to treatment for his impairments. The ALJ wrote to Plaintiff's "history of a moderate receptive language disorder and a severe expressive language disorder" and recorded Plaintiff's attendance at weekly speech therapy in 2019 due to dysphonia and dysarthria. [*Id.* at 48–49]. As such, the ALJ appears to have sufficiently considered Plaintiff's limitations. The ALJ's opinion, however, did not turn on whether the Plaintiff had learning and communicative impairments, but rather the severity of these impairments. [*Id.* at 47].

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[*Id.*].

In considering Plaintiff's conditions, and the record evidence supporting it, the ALJ merely concluded Ms. Paulino's tesimony did not corroborate the evidence and was inconsistent with Dr. Roecklein's evaluation. [*Id.*]. Plaintiff does not provide any new evidence to contest the issue of severity and persistence, nor does he point to any additional evidence not already considered by the ALJ. [ECF No. 22 at 15]. Plaintiff appears to ask this Court to reweigh the record evidence. *See Philips*, 357 F.3d at 1240 n.8. We cannot do so.

Lastly, the Plaintiff attempts to invoke the "Treating Physician Rule" by asserting that an RFC determination requires an RFC assessment of a treating or examining physician. [ECF No. 22 at 16]. This assertion, however, is misplaced. The Social Security Administration revised its

guidelines regarding the consideration of medical evidence on January 18, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (March. 27, 2017)). These revised guidelines changed how the agency considers medical opinions and previous medical findings for claims submitted on or after March 27, 2017. *See* 20 C.F.R. § 416.920c (2017). The regulations no longer use the language "treating source" and instead utilize the phrase "your medical source(s)" when referring to the medical sources the claimant decides to use. *Id.* More significantly, for this case, the revised regulations no longer retain the "treating source rule" and do not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

The regulations no longer mandate specific procedures that an ALJ must follow in considering opinions from treating sources. 20 C.F.R. § 404.1520c(b) (2017). Rather, the agency now focuses on the persuasiveness of the medical source in relation to the factors of (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that would support or contradict the medical finding. 20 C.F.R. § 404.1520c(a)–(c). The two most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). The ALJ is required to explain how persuasive he finds a medical opinion based on these two factors, and may, but is not required to, explain how he considered the other three factors. *Id.*

Here, Plaintiff filed his claim on April 8, 2019, and thus would fall under the revised regulations. [ECF No. 19 at 41]. In the opinion, the ALJ considered the testimony and medical findings of Dr. Roecklein, who evaluated Plaintiff shortly after the claim was filed. [*Id.* at 47]. The ALJ found Dr. Roecklein's opinion somewhat persuasive and gave his reasoning:

The undersigned finds Dr. Roecklein's opinion somewhat persuasive as it is consistent with the intelligence testing documenting the claimant's Full Scale IQ score of 74 indicative of borderline impaired intellectual functioning, the working memory index score indicating functioning within the low average range, and the achievement testing documenting deficiencies in mathematics, written language, and reading. It further is consistent with her observation of the claimant's expressive language difficulties (Ex. 5F, pgs. 5, 6, 7, and 13). However, in light of Dr. Roecklein's observation of the claimant's ability to follow a 3-step command (Ex. 5F, pg. 6) and his placement in the general education classroom (Ex. 1E, pg. 6), the undesigned finds that the claimant is capable of performing simple, routine, and repetitive tasks and interacting with supervisors, coworkers, and the public to a limited degree when doing so.

[*Id.* at 47–48]. The ALJ also considered the opinions of Dr. Green and Dr. Peterson using the same statutory framework and found their opinions persuasive. [*Id.*]. Thus, the ALJ fulfilled his duty of evaluating and assigning weight to the record medical evidence.

### III.    Plaintiff's Subjective Complaints

Plaintiff asserts that the ALJ erred in failing to consider all the evidence regarding the limiting effects of his educational and communicative limitations. [ECF No. 22 at 16–18]. To establish a disability through subjective complaints of pain or other symptoms, a plaintiff is required to show (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain or (3) that the objectively determined medical condition is severe enough to be reasonably expected to cause the claimed pain or symptoms. 20 C.F.R. § 416.929(c)–(d); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Here the ALJ found that Plaintiff had the following medically determinable impairments as required by Social Security Rulings ("SSRs") 85-28: asthma; speech/language impairment; borderline intellectual functioning; learning disorder; and anxiety disorder. [ECF. No 19 at 43].

After confirming that a plaintiff has a medically determinable impairment, the ALJ must evaluate the plaintiff's subjective complaints of pain or symptoms, and is required to determine if the severity of the impairment meets the appropriate statutory standards. 20 C.F.R. § 416.929(c)–

(d). If the ALJ discredits subjective testimony of pain or other symptoms, he or she must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). Like with other facets of a social security appeal, an articulated reason for discrediting a plaintiff's testimony based on substantial evidence will not be challenged by the reviewing court. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Further, an adequate credibility finding does not need to cite "particular phrases or formulations" in the determination, but must avoid "broad findings" that enable the court to conclude that the ALJ did not consider the "medical condition as a whole." *Jamison v. Bowen*, 814 F.3d 585, 588–90 (11th Cir. 1987); *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (remanding where the ALJ did not specifically address testimony by plaintiff and her daughter about plaintiff's pain).

Here, substantial evidence supports the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [ECF No. 19 at 47]. The ALJ addressed Ms. Paulino's testimony that Plaintiff was unable to follow multiple commands and multi-task. [ECF No. 19 at 46]. Contrary to Plaintiff's assertions, the ALJ noted that Plaintiff attends MDC for general education studies and took into consideration that he is afforded multiple learning accommodations while pursuing his education. [*Id*.]. The ALJ also considered that Plaintiff was placed on an Individualized Educational Plan ("IEP") because of his learning limitations. [*Id*.]. The ALJ did not err in finding that portions of the hearing testimony regarding severity were inconsistent with the record, particularly the assertion that Plaintiff is unable to follow multiple commands. [*Id*. at 47]. Specifically, the ALJ found they were inconsistent with Dr. Roecklein's evaluation, and with Plaintiff's enrollment in

general education courses at MDC. [*Id.*]. The ALJ also addressed Plaintiff's functional communication limitations in noting he was to have only occasional contact with supervisors, coworkers, and the public. [*Id.* at 48]. Thus, the ALJ specifically addressed Plaintiff's subjective complaints and refuted it with specific evidence from the record.

Additionally, Plaintiff argues the ALJ impermissibly cherry-picked the record for facts favoring a denial of the claim. [ECF No. 22 at 18]. The Eleventh Circuit, however, has held that nothing in the regulations requires an ALJ to apply an "all-or-nothing" approach to assessing the record, especially in reference to medical source opinions. *Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 225–26 (11th Cir. 2019). Rather, the weight afforded to each source opinion is based on the standards the ALJ considers. *Id.*; 20 C.F.R. § 404.1527(c). As such, here, the ALJ did not cherry-pick the information from the record, rather, he assigned varying levels of weight to each applicable provider. Further, the ALJ did not selectively choose information from Plaintiff's general studies record either, as Plaintiff suggests. [ECF No. 22 at 18]. The ALJ considered and noted the accommodations Plaintiff receives. [ECF No. 19 at 46]. The evidence of accommodations was measured against the medical records and opinions of Dr. Roecklein, Dr. Green, and Dr. Peterson based on their consistency and weight. [*Id.* at 47–48]. The ALJ fully explained the basis for such evaluations and the record does not show that they were clearly wrong as to discredit them. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("[t]he question is not . . . whether the ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it."). Accordingly, substantial evidence supports the ALJ's findings regarding Plaintiff's subjective symptoms.

IV.     **Plaintiff's Cross-Examination of Vocational Expert**

Plaintiff asserts the ALJ failed to properly elicit testimony from the VE by not explaining that Plaintiff had the right to cross-examination and thus violated his due process rights. [ECF No. 22 at 19]. The duty owed by an ALJ to an unrepresented plaintiff is based on whether said plaintiff was prejudiced by the ALJ's actions. *Kelly v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The Eleventh Circuit has extended this to situations regarding the ALJ's treatment of a vocational expert at an unrepresented plaintiff's hearing. *Thomas v. Comm'r of Soc. Sec.*, 841 F. App'x 128, 131 (11th Cir. 2020) (holding that plaintiff was not prejudiced when not given the opportunity to cross-examine the vocational expert). Again, prejudice is shown where the "record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown*, 44 F.3d at 935. Furthermore, this circuit has repeatedly held that conclusory allegations of prejudice that are no more than speculation of what proper procedure could have been afforded to the plaintiff do not meet this burden. *Thomas*, 841 F. App'x at 131; *see also Smith*, 677 F.2d at 830 (rejecting an argument of prejudice where the "proffer of prejudice" was "no more than speculations on ways in which an attorney could have bolstered his credibility before the ALJ.").

Here, Plaintiff's claims are conclusory. Plaintiff simply states that the ALJ's failure to explain the right to question the VE was a violation of due process. [ECF No. 22 at 19]. Yet, he makes no explanation of why it is a violation or why it was prejudicial. Plaintiff uses a circular argument by essentially arguing that his inability to question the VE was a violation simply because it was a violation. [*Id.*].

Furthermore, there are no clear gaps in the evidentiary record showing Plaintiff suffered any prejudice. Rather, the only example of a gap or showing of prejudice that Plaintiff addresses in his motion was fully answered by the ALJ and VE in the hearing. [*Id.* at 18]. Plaintiff contends

that his mother had questions, specifically regarding the use of bleach in the jobs proffered by the VE. [*Id.*]. He alleges his due process rights were violated because she was not allowed to ask this question directly, nor was she apprised of the right to question the VE. [*Id.* at 18–19]. The transcript of the hearing, however, shows the ALJ gave Plaintiff's mother time to ask her questions and make comments regarding the use of bleach at two points during the VE's testimony. [ECF No. 19 at 33–34, 36]. He also gave her time at the end of the hearing to ask any further questions, which she declined. [*Id.* at 36] ("Let me review it again, see if we can get to a decision. Anything further?").

As such, not only does Plaintiff fail to point to any prejudice in the alleged violations, but the alleged prejudice was resolved at the hearing. Remand is not warranted on this claim.

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is based on proper legal standards, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment [ECF No. 22] be **DENIED**, the Commissioner's Motion for Summary Judgment [ECF No. 27] be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 17th day of June, 2022.

_____

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:     **United States District Judge Robert N. Scola, Jr.;**

        **All Counsel of Record**